**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-03115-RPM

SCOTT CZARNIAK and
ADRIENNE CZARNIAK,

      Plaintiffs,

      v.

20/20 INSTITUTE, L.L.C., and
MATTHEW K. CHANG, M.D.,

      Defendants.

_____

**ORDER AWARDING PLAINTIFFS COSTS**
_____

On July 1, 2013, the Court concluded that Plaintiffs Scott and Adrienne Czarniak, as prevailing parties under Federal Rule of Civil Procedure 54(d), are entitled to costs incurred throughout the pendency of this action. The question remains as to what costs the Czarniaks may recover.

Before proceeding further, the Court must correct a portion of its Order on Costs [Doc. 192], in which it stated that "[c]osts include not only those defined by reference to federal law, but also, where federal law is silent, those authorized by Colorado's cost-shifting provision, Colo. Rev. Stat. § 13-17-202(1)(b), as it is the underlying substantive law in this action." [Doc. 192 at 4 (citation omitted).] That is incorrect. Colo. Rev. Stat. § 13-17-202(1)(b) would only apply if Plaintiffs submitted an offer of settlement that was rejected by 20/20 Institute, and then recovered a final judgment in excess of the amount they offered. *See id.* § 13-17-202(1)(a)(I). Plaintiffs submitted a $1,000,000 settlement offer that was

1

rejected by 20/20 Institute.  Plaintiffs' final judgment does not come remotely close to their $1,000,000 offer.  Therefore, Colo. Rev. Stat. § 13-17-202(1)(b) is not applicable to Plaintiffs' cost award.  Federal law alone guides this analysis.

**A.  Undisputed Costs - $742.52**

The following costs are claimed by Plaintiffs, not disputed by Defendant, and deemed taxable by the Court:

- $350 fee to file the Complaint in this action; and

- $392.52 in costs related to requests for Scott Czarniak's medical records.

**B.  Diana Carlino Bar Admission Fee - $0**

Plaintiffs claim $160 in costs for Diana Carlino's District of Colorado bar admission fee. Ms. Carlino is an associate in the New York office of Todd Krouner, lead counsel for Plaintiffs.  Presumably, Plaintiffs chose Mr. Krouner because his practice focuses on LASIK surgery malpractice.  Defendants should not be required to pay for the costs associated with that strategic decision, particularly since Plaintiffs were also represented by in-state counsel. Ms. Carlino's bar admission fee is not recoverable.

**C.  Process Server Fees - $258**

Plaintiffs claim $258 in process server fees.  The process server was used to locate Kelly Rainwater, a former 20/20 Institute employee, and serve her a subpoena for attendance at trial; and serve subpoenas on the Denver Broncos and Colorado Avalanche for information related to Plaintiffs' Colorado Consumer Protection Act Claim.  That cost is recoverable.

**D. Deposition Transcription Expenses - $16,600**

The Czarniaks seek $11,895.77 for deposition transcripts and related court reporter expenses incurred for depositions of fact witnesses, and $4,704.73 in the same costs for depositions of expert witnesses.   20/20 Institute argues that these costs are not taxable for various reasons, including:  (1) Plaintiffs did not use the transcripts or videotapes at trial; (2) the deponent never testified at trial; (3) the deponent's testimony pertained to a claim that was rejected by the jury.   That is a flawed and inappropriately narrow view of the deposition expenses authorized under 28 U.S.C. § 1920.   *See In re Williams Secs. Litig.-WCG Subclass*, 558 F.3d 1144, 1149 (10th Cir. 2009).   All Section 1920 requires "is that the generation of taxable materials be 'reasonably necessary for use in' the case 'at the time the expenses were incurred.'"   *Id.* (quoting *Callicrate v. Farmland Indus., Inc.*, 139 F.3d 1336, 1340 (10th Cir. 1998)).

The deponents whose depositions Plaintiffs seek to recover costs for, and their relation to the case, are as follows:  Dr. Chang was a named Defendant; the Czarniaks are the Plaintiffs; Dr. Danzo is the owner of 20/20 Institute with knowledge of 20/20's marketing, hiring and training practices; Ms. Stone was 20/20's office manager with knowledge of 20/20's advertising, staff training, and the Czarniak surgery; Ms. Tallant was the 20/20 employee who input the incorrect surgical plan into the LASIK laser; Drs. Pence, Bernitsky and McCall were treating physicians for Scott Czarniak following his failed LASIK surgery; Dr. Davis also treated Czarniak following his surgery and testified at trial as to a number of issues in the case; Debbie Allenbaugh and Jeffrey Opp were the parties' experts on Plaintiffs' economic damages stemming from the sale of their Avon home; Kelly Rainwater was the personal concierge at 20/20 Institute who met with Scott Czarniak before his surgery and

provided him promotional materials; Dr. Gamboa and Mr. O'Brien were the parties' experts on Scott Czarniak's future loss of earnings; Dr. Davidson was a defense expert on Plaintiffs' medical negligence and CCPA claims; Dr. Fleishman is the psychologist who diagnosed Scott Czarniak with post-traumatic stress disorder following his surgery; and Dr. Bircham is an optometrist who works at 20/20 Institute and examined Scott Czarniak before his surgery. Plaintiffs used some deponents' testimony to oppose summary judgment, some at trial, and some ultimately not at all.  Regardless, given the deponents' unique knowledge or expertise concerning unique aspects of Plaintiffs' claims or damages, or 20/20 Institute's affirmative defenses, the Court concludes that Plaintiffs' deposition expenses were reasonably necessary for use in the case at the time they were incurred.

Plaintiffs shall be awarded $16,600 in deposition transcript, videotape, and transcript copy costs incurred during the pendency of this action.

### E.  Printing, Copying, and Shipping Expenses - $1,257.09

Plaintiffs claim $2,206.32 in printing and copying costs.  To recoup such costs, a prevailing party needs to demonstrate that, under the particular circumstances, the costs were reasonably necessary for use in the case.  *In re Williams*, 558 F.3d at 1149.  20/20 Institute maintains that these costs are not recoverable particularly because Plaintiffs relied heavily on electronic courtroom technology to display and publish their exhibits.  Without parsing the individual exhibits Plaintiffs used in paper form, the Court is satisfied that 50 percent of their copying expenses were reasonably necessary for use in the case.  Accordingly, Plaintiffs may recover $1,103.16 for those costs.  Similarly, Plaintiffs may recover $153.93 of the $307.86 in postage and shipping expenses they incurred to mail trial exhibits to Denver.

4

**F. Plaintiffs' Counsels' Travel Expenses During Depositions - $0**

The Czarniaks claim costs associated with attorney travel expenses to attend multiple depositions, including costs for lodging, airfare, and ground transportation.  The prevailing view is that, barring exceptional circumstances, an attorney's traveling expenses to attend a deposition are not taxable under 28 U.S.C. § 1920.  *See Delgado v. Hajicek*, No. 07-2186, 2009 WL 2366558, at *2 (D. Minn. July 30, 2009) (collecting cases).  *See generally* 10 Wright, Miller & Kane, *Federal Practice & Procedure - Civil* § 2676 n.26 (3d ed. 1998) (same).  There are no exceptional circumstances here that would warrant a departure from that general view.  For example, there is nothing to suggest Defendants were acting vexatiously or in bad faith in scheduling the location of or making their witnesses available for depositions.  *Cf. J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 760 F.2d 613, 616 (5th Cir. 1985).  Plaintiffs' counsels' deposition travel expenses are not recoverable.

**G. Expert Witnesses - $1,856.74**

1. <u>Deposition Attendance Fees</u> - $80

Plaintiffs paid Defendants' experts, Dr. Davidson and Mr. O'Brien, witness fees for appearing at depositions.  Plaintiffs are entitled to an attendance fee reimbursement of $40 for each expert deponent under 28 U.S.C. § 1821(b).

2. <u>Trial Attendance Fees</u> - $240

The Czarniaks claim actual costs for the time it took Tina Fleishman, Elizabeth Davis, and Anthony Gamboa to travel to, attend, and return home from the trial.  In *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987), the U.S. Supreme Court held that, by enacting 28 U.S.C. §§ 1920 and 1821, Congress comprehensively addressed the taxation of fees for litigants' expert and lay witnesses; accordingly, a district court may

exceed Section 1821's statutory cap on witness fees only when authorized by another statute. Under 28 U.S.C. § 1821(b), the witness attendance fee is capped at $40 for each day of trial attendance and travel to and from the trial. Applying that provision here, Drs. Fleishman, Davis and Gamboa each traveled to Denver, stayed overnight, then testified and returned home the following day. Therefore, the Czarniaks may recover $80 total for each witness ($40 for the day spent traveling to trial, $40 for the following day's trial attendance and trip home).

   3. Lodging and Expenses During Trial - $645

   The Czarniaks seek to recover hotel and food costs incurred by Drs. Fleishman, Davis, and Gamboa during trial. Under 28 U.S.C. § 1821(d), witnesses are entitled to a subsistence allowance when an overnight stay is required, and the allowance may not exceed "the maximum per diem allowance prescribed by the Administrator of General Services, . . . , for official travel in the area of attendance by employees of the Federal Government." *Id.* § 1821(d)(2). The maximum allowance set by the General Services Administration for Denver is $149 per night for lodging, and $66 per day for meals and incidental expenses.[1] On a federal employee's first and last day of travel, the $66 per diem is prorated to $49.50.[2] Here, Drs. Fleishman, Davis and Gamboa traveled to Denver, stayed overnight, and left town the following day. Dr. Fleishman did not claim any meal or incidental expenses, so the Czarniaks are entitled to $149 for her lodging. Drs. Davis and Gamboa did incur meal and incidental expenses; therefore, the Czarniaks are entitled to recover $248 for each of them ($149 for lodging, plus $49.50 per diem for the first and last days of travel), or $496 total.

---

[1] *See* U.S. Gen. Servs. Admin., Per Diem Rates Look-Up, *available at* http://www.gsa.gov/portal/category/100120.
[2] *See* U.S. Gen. Servs. Admin., Meals and Incidental Expenses (M&IE) Breakdown, *available at* http://www.gsa.gov/portal/content/101518.

4. <u>Travel Costs During Trial</u> - $891.74

The Czarniaks also claim costs for airfare and ground transportation for Drs. Fleishman, Gamboa and Davis.   Dr. Fleishman traveled by private vehicle from Vail to Denver.   Plaintiffs are therefore entitled to recover the $55.94 they paid Dr. Fleishman for her mileage expenses.   *See* 28 U.S.C. § 1821(c)(2).

Dr. Gamboa supposedly incurred $773 in airfare expenses.   To recover common carrier travel expenses, "a receipt or other evidence of actual cost shall be furnished."   *Id.* § 1821(c)(1).   Here, the only evidence of airfare expense is on an invoice submitted by Gamboa to Todd Krouner.   In the absence of an airline receipt, the Court will not award costs for Dr. Gamboa's airfare.   Dr. Gamboa also claims $199.58 in ground transportation expenses going round trip from Denver International Airport ("DIA")  to the Ritz Carlton in downtown Denver.   The services were booked through the Ritz Carlton.   A one-way trip of $100 from DIA to downtown does not satisfy the requirement that a witness "utilize a common carrier at the most economical rate reasonably available."   *See* 28 U.S.C. § 1821(c)(1).   The Court declines to award costs for Dr. Gamboa's ground transportation expenses.

Dr. Davis incurred $535.80 in round trip airfare from Minneapolis to Denver, which she provided a receipt for.   That cost is recoverable in full.   Dr. Davis also claims $517.68 in ground transportation expenses for the following trips:  home to office, office to Minneapolis airport, DIA to downtown Denver, downtown Denver to DIA, Minneapolis airport to home.   That works out to $103.54 per trip, which, in the Court's view, is not "the most economical rate reasonably available."   *Id.*   The Court will award $300 in costs for Dr. Davis' ground transportation.

**H.  Lay Witnesses - $254.37**

Plaintiffs also claim statutory attendance fees and mileage reimbursements for lay witnesses.  20/20 Institute claims that costs should not be awarded for witnesses whose testimony the jury considered unpersuasive.  There is no statute or case law saying so; the Court considers 20/20's argument meritless.  20/20 Institute further claims that costs for Gary Bircham and Jacquelyn Tallant are not recoverable because Plaintiffs did not call them to testify at trial.  The attendance fee provided for under 28 U.S.C. § 1821 is for the witness' attendance itself, regardless of whether testimony is given.  Both Bircham and Tallant attended a day of trial, and, according to the Final Pre-Trial Order [Doc. 107], Plaintiffs intended to call both of them.  Therefore, the Court rejects 20/20's argument.

Plaintiffs are entitled to lay witness attendance fees and mileage reimbursements, as follows:

- Dan Godec - $103.28 ($40 attendance fee; $63.28 mileage reimbursement);

- Kelly Rainwater - $51.87 ($40 attendance fee; $11.87 mileage reimbursement);

- Gary Bircham – $49.61 ($40 attendance fee; $9.61 mileages reimbursement);

- Jacquelyn Tallant - $49.61 ($40 attendance fee; $9.61 mileages reimbursement).

**I.  Trial Transcript Excerpts - $1,288.65**

Plaintiffs claim $1,288.65 in costs they incurred to obtain the trial transcripts of Mark Danzo's direct examination, and Dr. Chang's cross-examination.  Plaintiffs used the transcripts during summation to impeach the credibility of both witnesses.  The Court concludes those costs were reasonably necessary for use in the case, and are recoverable.

**J.   Reducing the award of costs given Plaintiffs' settlement with Defendant Dr. Chang**

20/20 Institute claims that the overall award of costs taxed against it should be reduced by 85 percent because Plaintiffs' pre-trial settlement with Dr. Chang included an amount for costs ($15,000), and the jury concluded that Chang was 85 percent at fault for Plaintiffs' injuries.   20/20 Institute cites no authority for that approach.   The Court considers this as being within its equitable discretion.   20/20 fails to show what costs Plaintiffs claim now are attributable exclusively to their case against Dr. Chang, and it is doubtful that such a showing would be possible given that the factual and legal issues in Plaintiffs' negligence claims against both Defendants were so intertwined.   If anything, 20/20 likely was more responsible for costs because it litigated the medical negligence claim along with Dr. Chang and the Colorado Consumer Protection Act claim on its own.   20/20 Institute also proceeded to trial, whereas Dr. Chang settled beforehand.   The Court declines to apportion costs between the Defendants.   20/20 Institute is fully liable for Plaintiffs' costs.

This conclusion does not result in a double cost recovery for Plaintiffs.   Dr. Chang's decision to give Plaintiffs $15,000 in costs was presumably a settlement strategy; it represented part of the price for Plaintiffs to settle, rather than the actual costs Plaintiffs incurred to litigate against him and 20/20 Institute.

**K.   Total Award**

The cost award for each category described above is as follows:

- Undisputed Costs - $742.52

- Diana Carlino Bar Admission Fee - $0

- Process Server Fees - $258

- Deposition Transcription Expenses - $16,600

- Printing, Copying, and Shipping Expenses - $1,257.09

- Plaintiffs' Counsels' Travel Expenses During Depositions - $0

- Expert Witnesses - $1,856.74

- Lay Witnesses - $254.37

- Trial Transcript Excerpts - $1,288.65

Accordingly, it is ORDERED that the Clerk of the Court shall tax costs in the amount of $22,257.37 against Defendant 20/20 Institute.

Dated:  July 15, 2013.

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch
Senior District Judge

.